08 CV 5258

JUDGE RAKOFF

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CCM PATHFINDER POMPANO BAY, LLC, | )<br>) 08 Civ. _____<br>) |
| Plaintiff, | )<br>) Removed from:<br>) Supreme Court of the State of New York |
| -against- | ) County of New York<br>) |
| COMPASS FINANCIAL PARTNERS LLC and COMPASS USA SPE LLC, | ) Index No. 106953-08<br>)<br>) Date Filed: 05/20/08 |
| Defendants. | )<br>) |

RECEIVED
JUN 0 9 2008
U.S.D.C. S.D. N.Y.
CASHIERS

### NOTICE OF REMOVAL TO U.S. DISTRICT COURT, PURSUANT TO 28 U.S.C. §§ 1334 AND 1452 AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 9027, OF CASE COMMENCED IN THE SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK ON MAY 20, 2008

Defendants Compass Financial Partners LLC and Compass USA SPE LLC hereby remove to this United States District Court for the Southern District of New York the action filed against them, on Monday May 20, 2008, by Plaintiff CCM Pathfinder Pompano Bay, LLC in the Supreme Court of the State of New York, County of New York, on the grounds that the removed action has a significant connection to a confirmed chapter 11 plan, asset sale and related pending litigation commenced in chapter 11 bankruptcy cases in the United States Bankruptcy Court for the District of Nevada and that is now being adjudicated in the United States District Court for the District of Nevada. The removed action involves the same claims regarding the same property that is the subject of the litigation in the District Court in Nevada.

This Court has subject matter jurisdiction over the removed action pursuant to 28 U.S.C. § 1334(b), removal of the action is authorized under 28 U.S.C. § 1452, and, as will be explained

in Defendants' motion for transfer of venue, the interests of efficient judicial administration and

avoidance of duplication and inconsistent results requires that venue of the removed action be

transferred to United States District Court for the District of Nevada.

### Statement of Facts

1.      On April 13, 2006, USA Commercial Mortgage Company and four if its affiliates

(collectively, the "Debtors") filed for chapter 11 relief in the U.S. Bankruptcy Court for the

District of Nevada (the "Nevada Bankruptcy Court"), jointly administered case no. 06-10725

LBR (the "Nevada Bankruptcy Cases"). The Debtors were in the business of originating and

servicing commercial real property loans, and raised funds by soliciting individuals and entities

(together with their successors and assigns, the "Investors") to invest in fractional interests in the

loans. At the time of the commencement of the Nevada Bankruptcy Cases, the Debtors were

servicing 115 loans involving 3,600 Investors. Plaintiff CCM Pathfinder Pompano Bay, LLC

("Plaintiff") is one such Investor.

2.      Pursuant to an asset purchase agreement and a confirmed chapter 11 plan of

reorganization in the Nevada Bankruptcy Cases (the "Chapter 11 Plan"), Defendants Compass

Financial Partners LLC and Compass USA SPE LLC and certain of their affiliates (collectively

"Compass") purchased the loan servicing rights and certain related assets from the Debtors in

respect of 65 loans. Compass paid approximately $67 million (subject to certain purchase price

adjustments that are the subject of pending litigation in the Nevada Bankruptcy Court). An order

confirming the Chapter 11 Plan and approving the asset purchase agreement and sale to Compass

was entered by the Nevada Bankruptcy Court on January 8, 2007. The sale was consummated

on February 16, 2007.

3.      On May 21, 2007, certain of the Investors filed suit in the U.S. District Court for the District of Nevada (the "Nevada District Court") against Compass alleging that Compass had breached its contractual and fiduciary duties to the Investors under the loan servicing agreements with respect to the loan servicing rights Compass acquired from the Debtors under the chapter 11 Plan and asset purchase agreement. On May 25, 2007, Compass commenced litigation in the Nevada Bankruptcy Court against certain of the Investors to enjoin them from interfering with Compass' rights under the Chapter 11 Plan, the asset purchase agreement and the loan servicing agreements; and the Nevada Bankruptcy Court enjoined those Investors from further interference. Thereafter, the litigation commenced by Compass in the Nevada Bankruptcy Court was transferred (by withdrawal of the reference) to the Nevada District Court and consolidated with the litigation commenced by certain of the Investors against Compass. The consolidated actions are being actively litigated in the Nevada District Court (there are presently over 500 entries in the docket of the consolidated litigation).

4.      On May 22, 2008, Plaintiff, one of the Investors, sued Compass entities Compass Financial Partners LLC and Compass USA SPE LLC ("Defendants") for breach of the loan servicing agreements and breach of fiduciary duty in the Supreme Court of the State of New York, County of New York (the "New York State Case"). The very same loan in which Plaintiff is a participant Investor, and that is the subject of the New York State Case, is also the subject of the breach of loan servicing agreements and breach of fiduciary duty suit now pending in the Nevada District Court that was brought by certain other Investors. As a result, the claims and causes of action contained in the New York State Case are already being litigated in the Nevada District Court with respect to the same loan that Plaintiff is an Investor in.

5.    The Chapter 11 Plan that was confirmed by the Nevada Bankruptcy Court provides that the Nevada Bankruptcy Court (and hence the Nevada District Court) shall retain exclusive jurisdiction to determine all matters related to the loan servicing agreements (which is the subject matter of the New York State Case) and the asset purchase agreement, and the other rights acquired by Compass in respect of serviced loans under the Chapter 11 Plan. Both the Nevada Bankruptcy Court and the Nevada District Court have since entered orders determining that they have subject matter jurisdiction over litigation involving the interpretation and enforcement of the loan servicing agreements and other assets and rights that Compass purchased in the Nevada Bankruptcy Cases pursuant to the confirmed Chapter 11 Plan.

6.    Compass, in its capacity as servicer and pursuant to the Chapter 11 Plan, has continuing obligations to recover and turn over to the creditors trust that was created under the Chapter 11 Plan overpayments that were made by the Debtors to Investors prior to and during the Bankruptcy Cases. Hence, resolution of the litigation between Compass and the litigating Investors, including the claims brought in the New York State Case, will have a direct impact on the administration of the bankruptcy estates of the Debtors and the recovery of creditors.

## Subject Matter Jurisdiction and Removal

7.    Section 1452(a) of Title 28 of the U.S. Code grants a very broad right to parties to civil actions to remove "any claim or cause of action" to the district court (and by referral to the bankruptcy court) provided that bankruptcy jurisdiction exists under 28 U.S.C. § 1334. This United States District Court for the Southern District of New York has subject matter jurisdiction over the New York State Case because the New York State Case is a civil proceeding that arises in or is related to a case under title 11 -- the Nevada Bankruptcy Cases and the litigation pending in the Nevada District Court. The New York State Case has: (a) a close nexus to the Chapter 11

Plan and the interpretation, implementation, execution and administration of the Chapter 11 Plan; and (b) a significant connection to the litigation regarding that Chapter 11 Plan, the asset purchase agreement, injunctions that were entered against certain of the Investors, and the rights of Compass as servicer that came out of the Nevada Bankruptcy Cases and that is now pending in the Nevada District Court.

8.     Resolution of the New York State Case will require a court to interpret the Chapter 11 Plan, the asset purchase agreement and the loan servicing agreements. Resolution of the New York State Claims in the Nevada District Court together with the other consolidated litigation is the only way to avoid inconsistent results and inefficient use of judicial resources. Accordingly, Defendants shortly will file a motion for transfer of venue to the Nevada District Court.

9.     This removed action is a core proceedings under 28 U.S.C. § 157(b) in that it (a) involves rights of the Defendants established under the Chapter 11 Plan, (b) implicates an injunction entered by the Nevada Bankruptcy Court in favor of Compass and against certain of the Investors, and (c) will have a direct impact on the administration of the Debtors' estates and the recovery of creditors.

10.     If any of this removed action is determined to be a non-core proceeding, Defendants hereby consent to the entry of final orders or judgment by the bankruptcy judge with respect to any and all claims and causes of action in the removed action.

11.     Attached hereto is a copy of the complaint filed by Plaintiffs in the New York State Case. No other pleadings have been filed in that case.

WHEREFORE, Defendants Compass Financial Partners LLC and Compass USA SPE LLC respectfully request removal of this action from the Supreme Court of the State of New

York, County of New York, to the United States District Court for the Southern District of New

York.

Dated: New York, New York
          June 9, 2008

MILBANK, TWEED, HADLEY & McCLOY LLP

By:

Linda Dakin-Grimm
Daniel M. Perry
Tyson M. Lomazow
1 Chase Manhattan Plaza
New York, NY 10005-1413
(212) 530-5000
*Attorneys for Defendants Compass Financial
Partners LLC and Compass USA SPE LLC*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CCM PATHFINDER POMPANO BAY, LLC, | ) | 08 Civ. _____ |
| | ) | |
| Plaintiff, | ) | Removed from: |
| | ) | Supreme Court of the State of New York |
| -against- | ) | County of New York |
| | ) | |
| COMPASS FINANCIAL PARTNERS LLC and COMPASS USA SPE LLC, | ) | Index No. 106953-08 |
| | ) | |
| | ) | Date Filed: 05/20/08 |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2008, I caused a true and correct copy of the NOTICE OF REMOVAL to be served by Federal Express upon the following:

> Betty M. Shumener
> Todd B. Marcus
> Robert J. Odson
> DLA Piper US LLP
> 1251 Avenue of the Americas
> New York, NY 10020
> (212) 335-4500

DATED:    June 9, 2008

By: _____

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------x

CCM PATHFINDER POMPANO BAY, LLC,

               Plaintiff,

        -against-

COMPASS FINANCIAL PARTNERS LLC, and
COMPASS USA SPE LLC,

               Defendants.

-------------------------------------------------------------x

Index No.: 106953/08

Date Filed: 5/20/08

Plaintiff designates NEW YORK COUNTY as the place of trial.

**SUMMONS**

Defendants' place of business is 333 Seventh Avenue, Third Floor New York, New York 10001

To the above named Defendants:

     YOU ARE HEREBY SUMMONED to answer the complaint in this action and serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on plaintiff's attorneys within twenty (20) days after service of this summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, New York
      May 19, 2008

                    DLA PIPER US LLP

                    By _____
                      Betty M. Shumener
                      Todd B. Marcus
                      Robert J. Odson
                  1251 Avenue of the Americas
                  New York, New York 10020
                  (212) 335-4500

                  *Attorneys for Plaintiff*
                  *CCM PATHFINDER POMPANO BAY, LLC*

Exhibit A     Exhibit B     Exhibit C     Exhibit D     Exhibit E

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------

CCM PATHFINDER POMPANO BAY, LLC,                           Index No. 106953/08

Plaintiff,

-against-                                                  **COMPLAINT**

COMPASS FINANCIAL PARTNERS LLC, and
COMPASS USA SPE LLC,

Defendants.
-------------------------------------------------------------------

Plaintiff CCM Pathfinder Pompano Bay, LLC ("**CCM Pathfinder**"), by its attorneys

DLA Piper US LLP, for its Complaint against defendants Compass Financial Partners LLC and

Compass USA SPE LLC (together, "**Compass**"), alleges as follows.

## I.    Introduction

1.    CCM Pathfinder brings this action against Compass, the loan servicer under a

$32,000,000 loan (the "**Loan**") secured by a first-priority mortgage on a condominium

conversion project (the "**Property**"), for breach of contract, breach of the implied covenant of

good faith and fair dealing, and breach of fiduciary duty, and seeks millions of dollars in

compensatory damages and punitive damages, exclusive of interest, costs and attorney's fees.

CCM Pathfinder also seeks declaratory relief and an accounting.

2.    Compass has been (a) demanding hundreds of thousands of dollars in late charges

which Compass was not entitled to demand under the Loan, and (b) compounding monthly over

one million dollars in default interest which Compass was not entitled to compound under the

Loan. In addition, Compass has been claiming that these late charges and compounded default

interest are payable to Compass before any payments are made to CCM Pathfinder. By so doing,

Compass is attempting to secure a windfall for itself at the expense of CCM Pathfinder, whose

interests Compass is obligated to protect. By these and other over reaching maneuvers, Compass is the loan servicer and acting attorney in fact - breached and repudiated the contractual and fiduciary duties owed by Compass to CCM Pathfinder. As a result, Compass has caused and evidenced a clear intention to cause CCM Pathfinder to suffer the loss of millions of dollars which Compass should be compelled to compensate to CCM Pathfinder. In addition, Compass should be assessed punitive damages by reason of its repeated violations of the trust, confidence and control that CCM Pathfinder reposed in Compass.

## II.    Parties, Jurisdiction and Venue

3.    CCM Pathfinder is a Delaware limited liability company which has its principal place of business in Greenwich, Connecticut.

4.    CCM Pathfinder is informed and believes and thereon alleges that defendant Compass Financial Partners LLC is a Delaware limited liability company which has its principal place of business in New York, New York.

5.    CCM Pathfinder is informed and believes and thereon alleges that defendant Compass USA SPE LLC is a Delaware limited liability company which has its principal place of business in New York, New York.

6.    Venue and jurisdiction lie with this Court because defendants have their principal place of business in the State of New York, County of New York.

## III.    Background Facts

A.    The Loan Servicing Agreements

7.    Compass is the successor in interest to USA Commercial Mortgage Company ("USA"). As the loan servicer under certain Loan Servicing Agreements relating to the Loan, CCM Pathfinder is the successor lender under at least 83 of those Loan Servicing Agreements

(collectively, the "**Loan Servicing Agreements**"). A couple of the Loan Servicing Agreements is attached hereto as **Exhibit "A"** and incorporated by reference herein.

8.    Although there were 391 original lenders who owned interests in the Loan, CCM Pathfinder is informed and believes, and thereon alleges, there were only three or four forms of the Loan Servicing Agreements between Compass and those direct lenders, only two of these forms were used with the more than 83 lenders from whom CCM Pathfinder acquired its interests in the Loan.

9.    As to the two forms of Loan Servicing Agreements pertaining to CCM Pathfinder's interests in the Loan, there appear to be only two substantive differences, as follow: (1) the vast majority of the Loan Servicing Agreements provide for a loan servicing fee of 1% of the outstanding principal of the Loan, whereas a few provide for a loan servicing fee of 3% of that outstanding principal, and (2) the servicer may receive late charges collected from the borrower under the Note, whereas some Loan Servicing Agreements provide that the servicer may receive late charges and default interest collected from the borrower.

B.    The Loan

10.    The Loan that is the subject of the Loan Servicing Agreements is evidenced by a Promissory Note Secured by Mortgage dated June 20, 2005 in the principal face amount of $32,000,000 (the "**Note**") executed by Bay Pompano Beach, LLC (the "**Borrower**") for the benefit of the 391 lenders listed on a document attached to the Note on whose behalf Compass is servicing the Loan. A true and correct copy of the Note is attached hereto as **Exhibit "B"** and incorporated by reference herein.

11.    CCM Pathfinder acquired the interests of at least 83 lenders in the Loan representing in excess of 21% of the Loan in the aggregate, and is the successor in interest and

3

assignee of those lenders under the Loan Servicing Agreements at issue in this action. A true and correct copy of the list of lenders from whom CCM acquired its interests in the Loan is attached hereto as **Exhibit "C"** and incorporated by reference herein.

12.     As collateral security for the indebtedness evidenced by the Note, Borrower executed and delivered a Mortgage, Security Agreement and Assignment of Rents dated May 18, 2005 which was recorded in the official records of Broward County, Florida on June 30, 2005 as CFN # 105140658, or Book 39975 Page 1043, Page 1 of 44, Broward County Commission (the **"Mortgage"**). A true and correct copy of the Mortgage is attached hereto as **Exhibit "D"** and incorporated by reference herein.

13.     The Note matured on June 30, 2006, at which time all amounts outstanding under the Note became immediately due and payable.

14.     CCM Pathfinder is informed and believes and thereon alleges that, on or about February 16, 2007, Compass acquired the servicing rights under the Loan Servicing Agreements. CCM Pathfinder is also informed and believes, and thereon alleges, that in or around that time, Borrower offered to pay off the Note in full — including a $320,000.00 exit fee — provided Compass cease to insist upon the payment of the improperly computed default interest and improperly assessed late charges (which Compass had improperly assessed. Compass is not allowed to assess such compounded default interest or any late charges on the total amount due under the Note on maturity. Thus, Compass should have accepted Borrower's offer.

15.     CCM Pathfinder is informed and believes and thereon alleges that, without consulting the direct lenders, Compass unilaterally rejected the Borrower's offer and, instead, imposed outrageous late charges and default interest, even though the exit fee (which Compass is not otherwise entitled to receive under the Loan Servicing Agreements) may have been sufficient

4

to recharge both the default interest and late charges, had Compass bothered to properly assess these charges in the first place. In any event, and at a minimum, Compass owed a fiduciary duty to CCM Pathfinder and the other lenders under the Loan to disclose and/or accept Borrower's offer.

16.     By these over-reaching tactics, Compass breached paragraph 11 of the Loan Servicing Agreements (Exhibit A hereto) which provides, in pertinent part, as follows (emphasis added):

> 11.     Limited Power of Attorney.  With respect to each loan, Lender hereby agrees that [Compass] shall have full power and authority, and Lender hereby appoints [Compass] as its true and lawful attorney-in-fact to ... **do all things and take all actions on behalf of Lender** which are necessary or convenient to effectuate this Agreement and its intent and **to protect Lender's interest under any note, deed of trust, guaranty, security agreement or other document pertaining to any Loan....**

17.     By rejecting Borrower's offer to pay off the Loan in full, Compass failed **"to do all things and take all actions on behalf of Lender ... and to protect Lender's interest under any note, deed of trust ... or other document pertaining to any Loan."** To the contrary, Compass breached its fiduciary and contractual duties to CCM Pathfinder under the Loan Servicing Agreements by demanding the payment of improper and excessive late charges and default interest.

C.     Compass Demanded the Payment of Unauthorized Late Charges.

18.     After the Note matured, Compass assessed hundreds of thousands of dollars in improper and excessive late charges which the Note prohibits Compass from assessing. When the Note matured, the outstanding late charges were in the amount of $9,651.50 and were assessed on account of late payments of one or more installments of interest payments due under the Note. However, when the Borrower failed to pay off the entire outstanding balance of the

Loan by June 30, 2006 - *i.e.*, ten days after the Note matured on June 30, 2006.  Compass imposed a five percent (5%) late charge, in the amount of $750,148.58, on the total amount due under the Note.

19.    Paragraph 8 of the Loan Servicing Agreements (Exhibit A) provides, in pertinent part (emphasis added):

> 8.    Compensation to USA for Loan Servicing.  Lender authorizes USA [Compass] to retain . . . . (3%) per annum of the maximum principal amount of each of the Loans, **(b) any late charges collected from the Borrower pursuant to the terms of the Note,** and (c) any default interest collected from the Borrower pursuant to the terms of the Note.  Notwithstanding the foregoing, it is agreed and acknowledged that USA [Compass] derives the bulk of its revenues from charging loan fees ("points") to the Borrower . . .

Thus, under the Loan Servicing Agreements, Compass is entitled to recover only "late charges collected from the Borrower **pursuant to the terms of the Note.**"  (Exhibit "A"; emphasis added.)  The terms of the Note, however, expressly prohibit Compass from assessing a late charge on the total amount due under the Note after maturity.  Paragraph 8 of the Note (Exhibit B) provides, in pertinent part, as follows (emphasis added):

> 8.    Late Charge.  Borrower acknowledges that if any interest payment is not made when due, the holder hereof will incur extra administrative expenses . . . and the loss of the use of funds in connection with the delinquency in payment.  Because the actual damages suffered by the holder hereof by reason of such extra administrative expenses and loss of use of funds would be impracticable or extremely difficult to ascertain, Borrower agrees that five percent (5%) of the amount so delinquent shall be the amount of damages to which such holder is entitled, upon such breach, in compensation therefor. . . .  **Notwithstanding anything to the contrary contained in this Note, this five percent (5%) late charge will apply to any monthly interest payment that is not made when due and will <u>not</u> apply to the total amount due under this Note if this Note is accelerated as permitted by this Note or any other Loan Document or not paid on the maturity date.**

20. Although the five percent (5%) late charge was to apply only to delinquent monthly interest "payments" due under the Note prior to the maturity date, Compass assessed a five percent (5%) late charge on "the total amount due" — i.e., on all outstanding principal as well as on all accrued and unpaid interest — which was not "paid on the maturity date." The Note, however, plainly states that the five percent (5%) late charge "will **not apply to the total amount due under this Note if ... not paid on the maturity date.**" (Exhibit "B", emphasis added.) To benefit itself, however, at the expense of the lenders, because only Compass receives the late charges collected from the Borrower under the Loan, Compass wrongfully assessed and attempted to collect, at the expense of the amounts justly due and owing to CCM Pathfinder and the other lenders, an excessive and improper late charge of $750,145.58 based on the total amount due under the Note (when the proper late charges were only $9,651.39). Compass grossly exaggerated the late charges in order to maximize its recovery at the expense of CCM Pathfinder and the other lenders knowing that, if sufficient funds were not available to pay late charges as well as principal and interest, Compass would pay itself a windfall while causing CCM Pathfinder and the other lenders to lose their principal and accrued interest. Indeed, Compass confirmed these concerns when it repudiated the Loan Servicing Agreements and made clear its intention not to perform its obligations thereunder by claiming that it would pay itself late charges before CCM Pathfinder and the other lenders would receive one dime of principal or interest.

21. CCM Pathfinder is informed and believes and on that basis alleges that had Compass not attempted to extort hundreds of thousands of dollars in late charges from the Borrower — which Compass was not entitled to demand under the Note — Borrower would have paid off the Loan in full, in which case CCM Pathfinder would have recovered 100% of its

principal and accrued interest and the loan servicing fees, default interest and late charges to which Compass lays claim, or could lay claim, would have been much lower. Instead, Compass' actions (in attempting to impose improper charges) and inactions (in failing to seek the appointment of a receiver, as alleged below) have caused CCM Pathfinder to receive nothing on account of the Loan for years.

    32.    Now, two years later, CCM Pathfinder is still waiting for the Loan to be repaid or for Compass to seek the appointment of a receiver to collect the rents and profits derived from the Property while Compass proceeds to foreclose the Mortgage. CCM Pathfinder is informed and believes and on that basis alleges that Compass has not diligently pursued the remedies available under the Loan because Compass continues to insist upon these improper late charges and wrongfully computed default interest, and foreclosure would stop these sums from continuing to accrue (even under Compass' flawed interpretation of the Loan).

    33.    On November 15, 2007, Compass filed in the United States District Court, District of Nevada, an accounting of the Loan in which Compass discloses its demand, as of October 2, 2007, of $964,676.17 in late charges (when the correct amount of late charges should have been no more than $9,651.30) and $1,633,716.89 in compounded default interest — neither of which is allowed under the Note and Loan Servicing Agreements. In addition, Compass also insists upon a payment of a $320,000.00 exit fee. A true and correct copy of Compass' accounting as it pertains to the Loan at issue is attached hereto as Exhibit "E" and incorporated by reference herein.1

---

1    Compass' accounting pertains to a number of different loans which are not at issue in this action. Accordingly, financial information regarding these other loans have been omitted from Exhibit "E." Only the information in Compass' accounting regarding the Loan is included in Exhibit "E."

24. By its conduct, Compass not only breached its fiduciary duties to SCM Pathfinder, but also Compass breached its express obligations under the Loan Servicing Agreements.

D.    Compass Wrongfully Compounded Default Interest Purportedly Payable to Compass

25. In addition to its egregious over-reaching with respect to the late charges due under the Note, Compass also computed incorrectly the default interest due under the Note without any authority to do so. Although the Note provides that interest at the non-default rate (13%) is to be compounded monthly, the Note does not allow interest at the default rate (an additional 7%) is to be compounded at all. Paragraph 1 of the Note (Exhibit B) regarding non-default interest provides as follows (emphasis added):

> 1. Interest Rate.  **Interest at the rate of thirteen percent (13%) per annum** on the outstanding balance of principal evidenced by this Note shall accrue as follows: (i) on $26,791,000, from May 10, 2005; and (ii) on the balance, from June 21, 2005 until the date that all amounts due and owing under this Note are paid in full. Interest shall be calculated on the basis of a 360-day year and actual days elapsed.  **Accrued but unpaid interest shall be compounded monthly.**  This will result in a slightly higher interest rate than that stated.

26. By contrast, paragraph 9 of the Note (Exhibit B) regarding default interest does not provide for the compounding of default interest. Paragraph 9 provides:

> 9. Default Rate.  From and after the Maturity Date or, if any Event of Default occurs and is not timely cured, from the date that is ten (10) days after the date the payment was due, through and including the date that such default is cured, at the option of the holder hereof, all amounts owing under the Note and all sums owing under all of the Loan Documents shall bear interest at a default rate equal to twenty percent (20%) per annum ("Default Rate"). Such interest shall be paid on the first day of each month thereafter, or on demand if sooner demanded.

27.    Although the Loan Servicing Agreements provide only for default interest collected from the Borrower **pursuant to the terms of the Note,** the terms of the Note do not allow default interest to be compounded monthly. Nevertheless, in violation of both the terms of the Note and the terms of the Loan Servicing Agreements, Compass demanded the payment of default interest in an amount computed with monthly compounding. By so doing, Compass demanded far more default interest than was due and owing under the Note. CCM Pathfinder is informed and believes, and thereon alleges, that Compass' imposition of the improperly compounded default interest, together with Compass' demand for the improper late charges, precluded and prevented Borrower from repaying the Loan in full, as Borrower had offered to do.

E.    Compass Wrongfully Asserts Priority.

28.    In addition to Compass' wrongful demands for improper late charges and compounded default interest, Compass also claimed a priority to these payments (in addition to a percentage of the principal) prior to making certain required payments of principal and interest to CCM Pathfinder and the other lenders. By so doing, Compass wrongfully placed its interests ahead of the interests of CCM Pathfinder and the other lenders Compass is and was obligated to protect.

29.    The Loan Servicing Agreements, which control the contractual relationship between Compass and CCM Pathfinder, do not permit Compass to receive loan servicing fees, late charges or default interest ahead of the sums due and owing to CCM Pathfinder under the Loan. To the contrary, the Loan Servicing Agreements contemplate that any payments collected from Borrower will be paid first to principal, then to interest, then to late charges and then to

other fees. Thus, for example, Compass is obligated under paragraph 7(c)(i) of the Loan Servicing Agreements (Exhibit A) to do the following:

(c)    Until the total amount due under each note is paid in full

(i)    Proceed diligently to collect all payments due under the terms of the note and promptly pay the proper parties, when and if due, principal, interest, late charges, insurance and other specified funds.

30.    Thus, according to the Loan Servicing Agreements, the parties contemplated that principal would be paid first (which is fair, on its face, given that Compass is also a lender who receives its pro rata share of all principal payments), then interest (pari passu as to compounded, non-default interest for the lenders and non-compounded, default interest for Compass), followed by late charges, insurance and other specified funds.

31.    Indeed, paragraph 5 of the Loan Servicing Agreements acknowledges that the loan servicing fees, late charges and default interest are merely additional payments that Compass receives because Compass derives the "bulk of its revenues from charging loan fees ('points') to the Borrower" when the Loan was made. Thus, paragraph 5 of the Loan Servicing Agreements (Exhibit A) provides, in pertinent part, as follows (emphasis added):

5.    Compensation to USA for Loan Servicing.  Lender authorizes USA [Compass] to retain . . . (a) . . . (3%) per annum of the maximum principal amount of each of the Loans, (b) any late charges collected from the Borrower pursuant to the terms of the Note, and (c) any default interest collected from the Borrower pursuant to the terms of the Note.  **Notwithstanding the foregoing, it is agreed and acknowledged that USA [Compass] derives the bulk of its revenues from charging loan fees ("points") to the Borrower....**

32.    Compass is not entitled to any priority payment or to change the order or priority of the remittance of funds, particularly to benefit its own interests.  To permit Compass, unilaterally, to alter the priority of payments, while imposing unwarranted, excessive, and

incorrectly calculated late charges and default interest, results in an inherent conflict of interest for Compass, creates inconsistent and conflicting provisions within the Loan Servicing Agreements and constitutes a breach of the fiduciary duties that Compass owes to CCM Pathfinder and the other lenders.

33.     Compass claims that it is entitled to have any amounts recovered under the Loan applied first to the payment of its late charges and default interest because the Note grants the lenders the option to do so.  Compass relies on paragraph 4 of the Note (Exhibit B), which provides, in pertinent part, as follows (emphasis added):

> 4.     Application of Payments.   All payments on this Note shall, **at the option of the holder hereof**, be applied first to the payment of late charges accrued, if any, then to accrued interest then payable, and lastly to principal. . . .

34.     Compass overlooks the facts that CCM Pathfinder (and the other lenders) (a) is the owner and "holder" of the Note who has the "option", not Compass as servicer, and (b) has the right to determine whether it wishes to exercise its "option".  Here, CCM Pathfinder, as one of the holders of the Note, would not exercise any option which would allow Compass to impose excessive and unwarranted late charges and default interest at the expense of the due and proper repayment of the Loan (or for any other reasons).

35.     Indeed, the only provision that might have extended the right to Compass to act as CCM Pathfinder's attorney-in-fact with respect to CCM Pathfinder's option as a "holder" under the Note is paragraph 11 of the Loan Servicing Agreements, the very provision that requires Compass, as CCM Pathfinder's attorney-in-fact, "to do all things and take all actions on behalf of [CCM Pathfinder] . . . to protect [CCM Pathfinder's] interest under the note."  (Exhibit "A").  Thus, either the option is held by CCM Pathfinder, and CCM Pathfinder would not exercise its option to apply the funds received to late charges and default interest before principal and non-

12

default interest, or Compass is bound by its obligation to protect Lender's interest under the
Note to refrain from exercising that option. In either event, Compass is not entitled to place its
interests ahead of CCM Pathfinder under the Loan Servicing Agreements or under any of the
documents evidencing or securing the Loan.

E.      Compass Is Negligent In Servicing The Loan.

        66.     Although the Loan matured nearly two years ago, and has not been repaid
leaving millions of dollars outstanding, Compass waited months before initiating foreclosure
proceedings to enforce the rights of CCM Pathfinder and the other lenders under the Loan. Even
after Compass finally took action, Compass failed to seek the appointment of a receiver to
capture the rents and other income generated by the Property pending foreclosure.

        67.     CCM Pathfinder is informed and believes, and thereon alleges, that the holder of
the second-priority mortgage encumbering the Property promptly initiated foreclosure
proceedings, obtained the appointment of a receiver, and continues to assert its rights to, and
usurp CCM Pathfinder's priority interest in, the rents and other income generated by the
Property. Although CCM Pathfinder and the other lenders, as holders of the first priority
Mortgage, have prior and superior security interests in the rents and other income generated by
the Property, CCM Pathfinder is informed and believes and thereon alleges that Compass has
taken no steps to obtain the appointment of a receiver for the Property for the benefit of CCM
Pathfinder and the other lenders or to intervene in the receivership action brought by the holders
of the second-priority mortgage to ensure that the receiver preserves any rents or other proceeds
generated by the Property for the benefit of CCM Pathfinder and the other lenders under the
Loan. CCM Pathfinder is informed and believes and thereon alleges that by failing to take this
enforcement step to preserve and protect this collateral, Compass is jeopardizing the security

interests of CCM Pathfinder and the other lenders in the rents and other proceeds generated by the Property securing the Loan.

8.    In addition, CCM Pathfinder is informed and believes, and thereon alleges, that a number of the condominium units of the Property have been sold, but that Compass did not obtain the sales proceeds that should have been derived from the sale of those condominium units. CCM Pathfinder is informed and believes and thereon alleges that approximately $6.5 million has not been recovered for the lenders. CCM Pathfinder is informed and believes, and thereon alleges, that Compass has failed to take steps to protect CCM Pathfinder's interests and the interests of the other lenders with regard thereto. At a minimum, Compass has failed to keep CCM Pathfinder adequately informed so CCM Pathfinder could have an adequate understanding of the circumstances giving rise to such negligence and the measures taken, if any, to correct it.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

39.    CCM Pathfinder incorporates by reference its allegations in Paragraphs 1 through 38 above as if set forth in full herein.

40.    CCM Pathfinder and Compass are parties to the Loan Servicing Agreements.

41.    Under paragraph 11 of the Loan Servicing Agreements, Compass was required "to do all things and take all actions on behalf of Lender ... and to protect Lender's interest under any note, deed of trust ... or other document pertaining to the Loan."

42.    Compass breached paragraph 11 of the Loan Servicing Agreements by, among other things, (1) unilaterally rejecting the Borrower's offer to pay off the Note and wrongfully failing to notify CCM Pathfinder or the other lenders of the Borrower's offer before rejecting it, (2) wrongfully demanding excessive late charges, (3) wrongfully compounding default interest, (4) claiming that, on any funds recovered, Compass intends to pay itself late charges and default

14

interest before paying CCM Pathfinder its principal and interest due, and (8) failing to diligently pursue the remedies available under the Loan or to adequately protect the interests of CCM Pathfinder thereunder.

13.    Under the Loan Servicing Agreements, Compass is entitled to recover only late charges from the Borrower pursuant to the terms of the Note." Paragraph 8 of the Note prohibits Compass from assessing a late charge on the total amount due under the Note after maturity. Nevertheless, Compass wrongfully assessed a late charge of $750,145.58 on the total amount due under the Note as of the maturity date.

14.    Compass further breached and repudiated the Loan Servicing Agreements by wrongfully compounding default interest. The Note does not allow interest at the default rate to be compounded. The Note provides only that interest at the non-default rate of 13% is to be compounded monthly. Nevertheless, in violation of the terms of the Note and the Loan Servicing Agreements, Compass demanded default interest in an amount compounded monthly. By doing so, Compass demanded far more default interest than the amount it was entitled to demand under the Note.

15.    But for Compass breaching the Loan Servicing Agreements by, among other things, wrongfully assessing late charges, improperly compounding default interest and unilaterally rejecting Borrower's offer to pay off the Loan, Borrower might have paid off the Loan, CCM Pathfinder could have recovered its principal and accrued interest thereunder and Compass' loan servicing fees, default interest and late charges would no longer have continued to accrue.

16.    In addition to the breaches and repudiations referenced above, Compass failed to diligently pursue the remedies available under the Loan or to protect the collateral securing the

Loan, and breached paragraph 1(b)(iii) of the Loan Servicing Agreements, which requires Compass to collect all payments due under the terms of the note and promptly pay the proper parties.

17.    As a result of Compass' repeated self-dealing and breaches of the Loan Servicing Agreements, CCM Pathfinder has received nothing from its investment in the Loan since the maturity date.

18.    All conditions precedent to bringing this action have occurred, been performed, or have otherwise been waived.

## SECOND CAUSE OF ACTION
### (Breach of Fiduciary Duty)

49.    CCM Pathfinder incorporates by reference its allegations in Paragraphs 1 through 18 above as if set forth in full herein.

50.    At all material times, Compass owed a fiduciary duty to CCM Pathfinder. Compass, both as the loan servicer and as the attorney in-fact of CCM Pathfinder under paragraph 11 of the Loan Servicing Agreements, owes undivided loyalty and a fiduciary duty to CCM Pathfinder.

51.    Because of the fiduciary duty that Compass owes to CCM Pathfinder, Compass had a duty to act in the best interest of CCM Pathfinder and to protect CCM Pathfinder's interests with respect to the Loan.

52.    Compass breached its fiduciary duties to CCM Pathfinder by, among other things, (1) rejecting Borrower's offer to pay off the Loan and failing to notify or keep CCM Pathfinder informed with regard to same, (2) wrongfully charging excessive late charges and compounded default interest, in an effort to benefit itself at the expense of CCM Pathfinder, knowing that doing so is prohibited by the Note and Loan Servicing Agreements, (3) contending that it is

16

entitled to recover late charges and default interest before CCM Pathfinder recovers any of its principal and non-default interest under the Loan, (4) failing to adequately protect the collateral securing the Loan and to keep CCM Pathfinder apprised of same, and (5) failing to promptly initiate foreclosure proceedings and obtain the appointment of a receiver, placing CCM Pathfinder's security at risk.

53.    As a direct and proximate result of Compass' breaches and repudiation of its fiduciary duties to CCM Pathfinder, CCM Pathfinder has been damaged in an amount to be determined at trial.

54.    In doing the acts alleged herein, Compass conspired to and did act with oppression, fraud and malice, entitling CCM Pathfinder to an award of punitive damages in an amount to be ascertained at trial.

### THIRD CAUSE OF ACTION
#### (Declaratory Relief)

55.    CCM Pathfinder incorporates by reference its allegations in Paragraphs 1 through 54 above as if set forth in full herein.

56.    CCM Pathfinder has a present, practical need for a declaration of its rights under the Loan Servicing Agreements.

57.    Based on the facts set forth above, a question or controversy exists as to whether Compass may demand late charges on the total amount due under the Note or compounded default interest, pay itself late charges and default interest of 7% before paying CCM Pathfinder principal and interest of 13%, delay in enforcing the remedies available to CCM Pathfinder and the other lenders under the Loan, and fail to disclose information regarding the Loan to CCM Pathfinder (even after CCM Pathfinder repeatedly requested such information).

58.     CCM Pathfinder is directly and substantially harmed by Compass' failure to perform its duties as required by the Loan Servicing Agreements. Compass has undertaken conduct in disregard of the terms of the Loan Servicing Agreements and Note and in disregard of the rights of CCM Pathfinder thereunder, at law and in equity.

59.     Without a declaration of their rights and obligations, the controversy will continue and the parties will remain uncertain as to their rights and obligations under the Loan Servicing Agreements and Loan.

## FOURTH CAUSE OF ACTION
### (Negligence)

60.     CCM Pathfinder incorporates by reference its allegations in Paragraphs 1 through 59 above as if set forth in full herein.

61.     Compass undertook to service the Loan, and in doing so, Compass had a duty to utilize due care in performing its services in a competent manner.

62.     Compass breached that duty by, among other things, (1) failing to promptly initiate foreclosure proceedings to enforce CCM Pathfinder's rights under the Loan, (2) failing to seek the appointment of a receiver (and/or to intervene in the pending receivership action brought by the second mortgagee) to capture the rents and other income generated by the Property, (3) allowing the sale of condominium units encumbered by the Mortgage without collecting sales proceeds derived from the sale of such condominium units, failing to seek redress against the parties responsible for same and/or failing to keep CCM Pathfinder adequately apprised of the status of same, and (4) failing to disclose material information regarding the Loan to CCM Pathfinder.

63.     As a direct and proximate result of Compass' negligent conduct in failing to take steps to preserve and protect CCM Pathfinder's collateral or to properly notify CCM Pathfinder

of the status of same, Compass has jeopardized the security interests of CCM Pathfinder, and CCM Pathfinder has suffered damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### (Accounting)

64.    CCM Pathfinder incorporates by reference its allegations in Paragraphs 1 through 63 above as if set forth in full herein.

65.    Pursuant to the Loan Servicing Agreements and based on the fiduciary obligations that Compass owes and owed to CCM Pathfinder, among other things, CCM Pathfinder is entitled to an accounting of all Loan payments, interests, late charges, penalties, and any other receipts or disbursements related to Loan.

66.    Notwithstanding Compass's obligations with respect thereto, and CCM Pathfinder's requests therefor, Compass has failed and refused to provide an accounting, copies of books and records or access to inspect and copy the books and records relating to the Loan.

WHEREFORE, CCM Pathfinder demands judgment as follows:

(a)    For compensatory damages to be determined at trial;

(b)    For punitive damages to be determined at trial;

(c)    For a decree in CCM Pathfinder's favor and against Compass declaring that Compass is (i) prohibited from demanding late charges on the total amount due under the Note following maturity, (ii) prohibited from demanding compounded default interest, (iii) obligated to pay the principal and interest due CCM Pathfinder before paying itself late charges and default interest, and (iv) obligated to diligently protect the collateral securing the Loan and obligated to diligently apprise CCM Pathfinder of the status of the Loan and the conduct of Compass with respect thereto;

(d)    For an order directing Compass to provide an accounting;

(e)    For prejudgment interest on such damages as provided by law;

(f)    For costs of this suit, attorneys' fees, and expenses; and

(g)    For such other and further relief as this Court deems appropriate.

Dated: New York, New York
       May 19, 2008

DLA PIPER US LLP

By: _____
    Betty M. Shumener
    Todd B. Marcus
    Robert J. Odson
1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500

*Attorneys for Plaintiff*
*CCM Pathfinder Pompano Bay, LLC*

20