UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X
CCM PATHFINDER POMPANO BAY, LLC,                Case No. 08 Civ. 5258

              Plaintiff,

    v.

COMPASS FINANCIAL PARTNERS LLC and
COMPASS USA SPE LLC,

              Defendants.
-----------------------------------------------------------------X
CCM PATHFINDER GRAMERCY, LLC,                   Case No. 08 Civ. 5257

              Plaintiff,

    v.

COMPASS FINANCIAL PARTNERS LLC and
COMPASS USA SPE LLC,

              Defendants.
-----------------------------------------------------------------X
CCM PATHFINDER POMPANO BAY, LLC,                Case No. 08 Civ. 5298

              Plaintiff,

    v.

COMPASS FINANCIAL PARTNERS LLC and
COMPASS USA SPE LLC,

             Defendants.
-----------------------------------------------------------------X

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR REMAND**

DLA Piper US LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 335-4500

WEST\21469490.2

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................... 1

II. ARGUMENT ........................................................................................................... 3

    A. This Court Should Decide The Motion For Remand .............................. 3

    B. The State Actions Do Not Constitute "Collateral Attack" On The In Rem Jurisdiction Of The Nevada District Court ............................................ 4

    C. Bankruptcy Jurisdiction Does Not Exist Over The State Actions ......... 6

    D. Even If Bankruptcy Jurisdiction Exists, Mandatory Or Permissive Abstention Applies ................................................................................. 8

III. CONCLUSION ...................................................................................................... 10

## TABLE OF AUTHORITIES

Page

### CASES

*Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*,
　372 F.3d 154 (3d Cir. 2004)..................................................................................6

*Burr & Forman v. Blair*,
　470 F.3d 1019 (11th Cir. 2006) ..........................................................................5, 6

*Channel Bell Assoc. v. W.R. Grace & Co.*,
　1992 U.S. Dist. LEXIS 13014 (S.D.N.Y. 1992)..................................................3

*Consolidated Lewis Inv. Corp. v. First National Bank of Jefferson Parish*,
　74 B.R. 648 (E.D. La. 1987)..............................................................................3, 4

*Covanta Onondaga Ltd. v. Onondaga County Resource Recovery Agency*,
　281 B.R. 809 (N.D.N.Y. 2002)............................................................................3

*Falise v. American Tobacco Co.*,
　241 B.R. 48 (E.D.N.Y. 1999) ..............................................................................6

*Globalnet Financial.com, Inc. v. Frank Crystal & Co.*,
　449 F.3d 377 (2d Cir. 2006)...............................................................................10

*Kline v. Burke Const. Co.*,
　260 U.S. 226 (1922)..............................................................................................5

*Lefkowitz v. Bank of N.Y.*,
　528 F.3d 102 (2d Cir. 2007).................................................................................5

*Luan Investment S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*,
　304 F.3d 223 (2nd Cir. 2002)...........................................................................8, 9

*Montana v. Goldin (In re Pegasus Gold Corp.)*,
　394 F.3d 1189 (9th Cir. 2005) .............................................................................6

*Mt. McKinley Ins. Co. v. Corning Inc.*,
　399 F.3d 436 (2d Cir. 2005).................................................................................9

*Penthouse Media Group v. Guccione (In re Gen. Media, Inc.)*,
　335 B.R. 66 (Bankr. S.D.N.Y. 2005)...................................................................6

# TABLE OF AUTHORITIES

Page

*Renaissance Cosmetics, Inc. v. Dev. Specialists Inc.*,
    277 B.R. 5 (S.D.N.Y. 2002)..................................................................................3

*Renaissance Cosmetics, Inc. v. Oleg Cassini, Inc.*,
    2000 U.S. Dist. LEXIS 9198 (S.D.N.Y. 2000).......................................................3

*Retirement Systems of Alabama v. J.P. Morgan Chase & Co.*,
    386 F.3d 419 (2nd Cir. 2004).................................................................................5

*Signal Properties, Inc. v. Farha*,
    482 F.2d 1136 (5th Cir. 1973) ...............................................................................5

*Wall v. Merrill Lynch Pierce Fenner & Smith, Inc.*,
    1992 U.S. Dist. LEXIS 3640 (S.D.N.Y. 1992).................................................3, 4

## STATUTES

28 U.S.C. § 1404(a) ............................................................................................................4

I.  **INTRODUCTION**

Compass's Opposition to Pathfinder's Motion for Remand resorts to misstating the facts and name calling in order to divert attention away from the fact that there is no factual, legal, or equitable basis for transferring the State Actions to the Nevada District Court. For example:

- Compass claims the State Actions "are an effort to end-run litigation pending for well over a year in Nevada." Compass fails to disclose that the pleadings in the Nevada action are not even at issue. On January 22, 2008, the LLCs and Compass filed in the Nevada District Court an Agreed Stipulation ("Standstill Agreement") for "abatement of proceedings for the purpose of entering into mediation." At a hearing on April 28, 2008, the standstill was extended to June 2, 2008. (Declaration of John D. Spurling re Opposition to Motion to Transfer ("Spurling Decl."), Exs. C, D & E.). On June 25, 2008, the Nevada District Court ordered that the Standstill Agreements "remain in force and effect." The Nevada action is now at a standstill because it has **settled**. (Declaration of Selby Jessup re Opposition to Motion to Transfer ("Jessup Decl."), Ex. B.) By attempting to transfer and consolidate the State Actions with the Nevada action, Compass seeks to bring the State Actions to a standstill.

- Compass claims that Pathfinder is a "vulture fund" which purchased fractional interests in the Loans. Compass omits that it is a "vulture fund" that acquired the Loan servicing rights from the Debtor at a steep discount. On February 16, 2007, Compass issued a press release boasting that it paid only $67 million for $150 million of Debtor's assets. (Declaration of Gabriel Weaver in Support of Opposition to Motion for Remand ("Weaver Decl."), Ex. 7, p. 11.)

- Compass claims that Pathfinder is one of the "Direct Lender members of the LLCs," the plaintiffs in the Nevada action. This claim is false, and Compass provided no evidence for it. Pathfinder has never been a plaintiff in the Nevada action or a member of the

LLCs. (Weaver Decl., Ex. 2.) Compass also claims that four out of the hundreds of Lenders from whom Pathfinder acquired its interest in the Loans purportedly were members of the LLCs which sued Compass. First, Compass' claim is irrelevant because Pathfinder did not acquire any membership interests in the LLCs. Second, the LLCs, not the individual Lenders, are parties to the Nevada action. Third, not even the LLCs have any standing to pursue the Nevada action because the Nevada District Court ordered the LLCs to reconvey their interests in the Loans back to the individual Lenders who contributed their interests in the Loans to the LLCs. (See Supplemental Declaration of John D. Spurling filed concurrently herewith, Ex. A.)

- Compass claims the Nevada District Court reserved *in rem* jurisdiction over the Loan Servicing Agreements. As Compass knows, Pathfinder's State Actions against Compass for breach of contract, breach of fiduciary duty, and negligence do not constitute an action *in rem*. Unlike the LLCs which challenged Compass' ownership of the Loan Servicing Agreements and sought to terminate Compass as loan servicer under Nevada Revised Statutes 645B.073 and 645B.330, Pathfinder's State Actions do not challenge Compass' ownership of the Loan Servicing Agreements. To the contrary, Pathfinder merely alleged that Compass breached its contractual and fiduciary duties as loan servicer to Pathfinder. Such claims constitute an action *in personam*, not an action *in rem*. The Nevada District Court did not, and could not, reserve any *in personam* jurisdiction over Pathfinder since Pathfinder has never appeared in the Nevada action. Indeed, the Order provides that Nevada District Court reserved *in personam* jurisdiction over "the Plaintiff Lenders," which, by definition, does not include Pathfinder.

- Perhaps the most misleading of all is Compass's claim that the State Actions purportedly have a "close nexus" to the Debtor's bankruptcy case because to the "extent that Compass' view of the waterfall prevails, more money will be paid to Compass and less money

paid to creditors of the Debtors." However, Pathfinder seeks to hold Compass liable for breaches of its duties <u>after</u> Compass purchased its rights to service the Loans from the Debtor. Pathfinder's claims are not against the Debtor's estate and will have no effect on the assets of the estate available for distribution to the unsecured creditors. To the extent that Compass prevails in the State Actions on "the waterfall," such determination **cannot** constitute collateral estoppel in the Nevada action because the Nevada plaintiffs or other creditors are not parties to the State Actions. If Pathfinder prevails on "the waterfall," Compass will undoubtedly argue that such determination does not constitute collateral estoppel in the Nevada action. The State Actions affect money paid to Pathfinder, not the Debtor's other non-party creditors.

As demonstrated below, Compass's legal arguments are similarly misleading.

## II.   ARGUMENT

### A.   This Court Should Decide The Motion For Remand

Compass cites <u>Consolidated Lewis Inv. Corp. v. First National Bank of Jefferson Parish</u>, 74 B.R. 648 (E.D. La. 1987), and other **Louisiana cases** for the proposition that State Actions "should be transferred so that the Nevada District Court may consider the Motion to Remand."

The law of the Second Circuit, which is controlling, is settled that "courts faced with cross-motions for remand and change of venue consider the remand motion first and, if remand is denied, turn to the motion for change of venue." <u>Renaissance Cosmetics, Inc. v. Dev. Specialists Inc.</u>, 277 B.R. 5, 11 (S.D.N.Y. 2002); <u>Covanta Onondaga Ltd. v. Onondaga County Resource Recovery Agency</u>, 281 B.R. 809, 813 (N.D.N.Y. 2002); <u>Renaissance Cosmetics, Inc. v. Oleg Cassini, Inc.</u>, 2000 U.S. Dist. LEXIS 9198 *7 (S.D.N.Y. 2000); <u>Channel Bell Assoc. v. W.R. Grace & Co.</u>, 1992 U.S. Dist. LEXIS 13014 *5-7 (S.D.N.Y. 1992) (dismissing defendant's argument that motion to transfer should be heard before motion for abstention).

In <u>Wall v. Merrill Lynch Pierce Fenner & Smith, Inc.</u>, 1992 U.S. Dist. Lexis 3640 (S.D.N.Y. 1992), the parties filed cross-motions for remand and change of venue. Like Compass, defendants in <u>Wall</u> relied on <u>Consolidated</u> to argue that the case should be transferred to the Maryland Bankruptcy Court "to decide the question of jurisdiction" based on familiarity with the issues. <u>Id.</u> at *4-5. The New York District Court refused and remanded the action:

> [Defendants' argument] merely begs the question of subject matter jurisdiction, for we cannot transfer a case to the judge best placed to determine whether there is in fact federal jurisdiction unless we assume that the jurisdiction exists so to do, or simply ignore the issue altogether.
>
> \*   \*   \*
>
> The district court is not a legal way station, nor subject matter jurisdiction something that can be invoked solely to assist the transfer of a case from court to court. And, indeed, if we were so to put the cart before the horse, [by transferring before considering subject matter jurisdiction] we would thereby also deny plaintiffs not only the forum of their choice but perhaps the possibility of a jury trial, all without ever having determined whether the action was indeed "related to" the Maryland bankruptcy so as to confer jurisdiction. <u>Id.</u> at *5.

The threshold requirement for transferring venue is the determination of whether the case "might have been brought" in the transferee court. 28 U.S.C. § 1404(a). Thus, subject matter jurisdiction must be considered first. Indeed, if the Court were to transfer the State Actions to Nevada and the Nevada District Court determines that there is no subject matter jurisdiction, then the Nevada District Court will have to transfer the State Actions back to New York. To avoid procedural ping pong between New York and Nevada, Second Circuit law requires that Pathfinder's Motion for Remand be decided before Compass' Motion to Transfer.

**B.   The State Actions Do Not Constitute "Collateral Attack" On The *In Rem* Jurisdiction Of The Nevada District Court.**

Compass' argument that Pathfinder's Motion for Remand is an "impermissible collateral attack on the Nevada District Court's exercise of *in rem* jurisdiction" is nonsense because Pathfinder's claims for breach of fiduciary duty, breach of contract, and negligence seeking

damages are "quintessential *in personam* proceeding[s]." Burr & Forman v. Blair, 470 F.3d 1019, 1032 (11th Cir. 2006) (holding that a contract action seeking damages was an *in personam* action); Lefkowitz v. Bank of N.Y., 528 F.3d 102, 107-108 (2d Cir. 2007) (treating breach of fiduciary duty as an *in personam* action). As the United States Supreme Court stated in Kline v. Burke Const. Co., 260 U.S. 226, 230 (1922), *in personam* proceedings do not defeat a sister court's exercise of jurisdiction:

> Where the action is in rem the effect is to draw to the federal court the possession or control, actual or potential, of the res, and the exercise of state court of jurisdiction over the same res necessarily impairs, and may defeat, the jurisdiction of the federal court already attached.
>
> * * *
>
> But a controversy is not a thing, and a controversy over a mere question of personal liability does not involve the possession or control of a thing, and an action brought to enforce such liability does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending.

Likewise, *in personam* disputes do not impair the jurisdiction of the court that holds *in rem* jurisdiction over the property. Burr, 470 F.3d at 1032; see also Retirement Systems of Alabama v. J.P. Morgan Chase & Co., 386 F.3d 419, 426 (2nd Cir. 2004); Signal Properties, Inc. v. Farha, 482 F.2d 1136, 1137 (5th Cir. 1973).

In Burr, 470 F.3d at 1021, attorneys sought damages for breach of contract in state court, claiming entitlement to attorney's fees awarded in connection with a settlement of mass tort litigation in the district court. The mass tort litigation concluded with entry of a final order incorporating the settlement agreement. As part of the settlement agreement, attorneys' fees were to be paid out of a qualified settlement fund ("QSF"). Id. at 1023. The district court entered an injunction preventing plaintiffs from proceeding with their contract claims in state court, stating that it had "expressly retained jurisdiction over the QSF, the entire case, and any related matters." Id. at 1031. The Court of Appeals reversed, holding that the district court

lacked jurisdiction, in part, because plaintiff's "contract action is not an *in rem* proceeding; rather, it is a suit for breach of contract, a quintessential *in personam* proceeding." Id. at 1032. The Court of Appeal explained that plaintiff simply sought damages for breach of the agreement between the attorneys governing the distribution of funds. The ownership of the *res* (the QSF) was not in dispute. Id. Since the breach of contract action was not *in rem*, the fact that the district court had jurisdiction over the *res* was immaterial. Id.

Pathfinder seeks damages for breach of fiduciary and contractual duties under the Loan Servicing Agreements – quintessential *in personam* actions. Ownership of the Loan Servicing Agreements is not at issue in the State Actions. Unlike the Nevada Plaintiffs, Pathfinder's State Actions do not dispute Compass' ownership of the Loan Servicing Agreements. The State Actions do not implicate any *in rem* jurisdiction reserved by the Nevada District Court.

**C.    Bankruptcy Jurisdiction Does Not Exist Over The State Actions.**

"[B]ankruptcy jurisdiction is extremely limited after a plan has been confirmed." Falise v. American Tobacco Co., 241 B.R. 48, 58 (E.D.N.Y. 1999). "[A]ll courts that have addressed the question have ruled that once confirmation occurs, the bankruptcy court's jurisdiction shrinks." Penthouse Media Group v. Guccione (In re Gen. Media, Inc.), 335 B.R. 66, 73 (Bankr. S.D.N.Y. 2005) (citations omitted). In the Second Circuit and Ninth Circuit (where the Nevada Bankruptcy Court is located), more is required for post-confirmation jurisdiction than retention of jurisdiction in a plan. There must be a "close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of the confirmed plan...." Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.) 372 F.3d 154, 168-69 (3d Cir. 2004); Montana v. Goldin (In re Pegasus Gold Corp.), 394 F.3d 1189, 1194 (9th Cir. 2005)

Compass claims, without merit, that resolution of Pathfinder's claims "will have a direct impact on how much money recovered by Compass from the Borrowers will be available to turn over to the creditor trusts created under the Bankruptcy Plan for distribution to unsecured creditors." According to Compass' Opposition, the "Prepaid Interest" is a **fixed sum** of "$40 million" that must be remitted to the creditor trusts regardless of the amounts paid to Lenders and Compass. Thus, the waterfall will have no effect on the amount turned over to the creditor trusts.

Compass also claims that to the "extent that Compass' view of the waterfall prevails, more money will be paid to Compass and less money paid to creditors of the Debtors." Not so. Pathfinder seeks to hold Compass liable for breaches committed <u>after</u> Compass purchased its rights to service the Loans. Pathfinder's claims are not against the Debtor's estate and will have no effect on the assets available for distribution to unsecured creditors. Moreover, to the extent that Compass prevails in the State Actions with respect to "the waterfall," such determination **cannot** collaterally estop other Lenders or creditors of the Debtor in the Nevada action because neither the Nevada plaintiffs nor other creditors of the Debtor are parties to the State Actions.

Compass' claim that some of Pathfinder's predecessors-in-interest were creditors of the Debtor and filed proofs of claim is not only irrelevant, Compass provided no evidence for that claim. Pathfinder seeks to hold Compass, not the Debtor, liable for injuries caused to Pathfinder <u>after</u> Compass purchased the Loans Servicing Agreements from the Debtor. The purported claims of Pathfinder's predecessor-in-interest against the Debtor have no bearing on torts or breaches of contract committed by Compass against Pathfinder.

Finally, Compass' claim that the Plan retained jurisdiction over the State Actions is incorrect. The State Actions "do not arise out of and relate to the Chapter 11 Cases," as required under Section VIII-D of the Plan. The Order confirming the Plan states that the Bankruptcy

Court retained jurisdiction only as to termination of Compass as loan servicer under section 3 of the Loan Servicing Agreements. Paragraph 14 of the Confirmation Order provides:

> **[I]n connection with any attempted post-Closing exercise of a Surviving Section 3 Right**: (a) the Direct Lenders must provide Compass at least thirty (30) days prior written notice of the intended exercise of such right in accordance with section 8 of the Loan Servicing Agreement, (b) Compass shall have the right to challenge the exercise of such Surviving Section 3 Right by filing a motion with this Court prior to the expiration of such thirty (30) day period to determine whether such Surviving Section 3 Right has been properly and validly exercised (the "Compass Motion") **and the Court shall retain jurisdiction to adjudicate any such disputes**, (c) in the event Compass timely files such Compass Motion, the effectiveness of the attempted exercise of such Surviving Section 3 Right shall be stayed pending this Court's entry of an order in respect of the Compass Motion, and (d) the post-Closing survival of such Surviving Section 3 Right shall not impair in any respect any rights or interests of Compass under the Loan Servicing Agreements, including, without limitation, its rights under Section 2(c)(iii) of the Loan Servicing Agreement.

Unlike the Nevada action, the State Actions do not seek to terminate Compass as loan servicer under section 3 of the Loan Servicing Agreements.

### D. Even If Bankruptcy Jurisdiction Exists, Mandatory Or Permissive Abstention Applies

Compass does not dispute that (1) the Motion for Remand was timely brought; (2) the State Actions are based exclusively on state law claims; (3) there is no independent basis for federal jurisdiction; and (4) the State Actions do not arise under title 11, as required for mandatory abstention. However, Compass argues that mandatory abstention purportedly does not apply because (a) Pathfinder's claims cannot be "timely adjudicated" in New York, as the Nevada Action has a "head start of more than a year" and (b) Luan Investment S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.), 304 F.3d 223 (2nd Cir. 2002), establishes that the State Actions constitute a "core bankruptcy" matter. Both contentions are without merit.

First, Compass' claim that the Nevada Action has a "head start of more than a year" is grossly misleading because the Nevada Action has been at a "standstill" since January 22, 2008,

with no end in sight. Indeed, the Nevada Action has settled. Second, Petrie does not establish that the State Actions are a "core bankruptcy" matter. Petrie sought to impose liabilities which the bankruptcy court expressly defined as "excluded liabilities" in its confirmation order. Compass' obligations to comply with the terms of the Loan Servicing Agreement are not "excluded liabilities" under Debtor's Plan or the Confirmation Order. To the contrary, paragraph 82 of the Confirmation Order specifically provides that "[n]othing contained in the Asset Purchase Agreement shall modify the obligations owed to the Lenders by Compass as the loan servicer or rights of the Lenders against Compass as the loan servicer (or the rights of Compass as the loan servicer against the Lenders) under the applicable Loan Servicing Agreements and otherwise applicable law." (Spurling Decl. Ex. A.) Thus, the State Actions involve neither interpretation nor enforcement of the Confirmation Order. As the Second Circuit explained in Mt. McKinley Ins. Co. v. Corning Inc., 399 F.3d 436, 449 (2d Cir. 2005), "*Petrie* addressed a specific factual situation that demonstrated the dispute's unique effect on a reorganization in bankruptcy court and because none of the factors *Petrie* emphasized is present in this case, *Petrie* is not relevant." Since no Petrie factors are present in the State Actions, Petrie is "not relevant."

Even if mandatory abstention does not apply (and it does), permissive abstention applies as explained in Pathfinder's Motion for Remand because (a) the State Actions involve only state law claims between non-debtor parties, (b) there is no diversity jurisdiction, (c) the Nevada District Court has a heavy docket, (d) both Pathfinder and Compass are residents of New York, (e) Compass' principals and witnesses are in New York, (f) the physical evidence (i.e., Compass' loan servicing records) is in New York, (g) Pathfinder's choice of forum is New York, (h) New York has a substantial interest in adjudicating disputes between its citizens, (i) New York law applies to Pathfinder's tort claims, Globalnet Financial.com, Inc. v. Frank Crystal & Co., 449

F.3d 377, 384 (2d Cir. 2006) (If the tort law at issue is a "conduct-regulating" law (<u>e.g.</u>, deterring conduct amounting to breach of fiduciary duty and negligence), "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders."), (j) Compass is engaged in forum shopping, and (k) Pathfinder is entitled to a jury trial right (although Compass claims that it is seeking to transfer the State Actions to Nevada District Court and not Nevada Bankruptcy Court, Compass ignores the fact that the State Actions will be automatically "referred" to the Nevada Bankruptcy Court once they are transferred as required under Nevada District Court Local Rule 1001 because Compass claims that the State Actions "arise in or are related to" the Debtor's bankruptcy.

## III. CONCLUSION

For the reasons stated, Pathfinder respectfully requests that the Court remand the State Actions to the Supreme Court of New York where they rightfully belong.

Dated: New York, New York.
July 21, 2008

DLA PIPER US LLP

By: _____
Todd B. Marcus (TM-5404)
1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500
*Attorneys for Plaintiffs*